IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br><br>         vs.<br><br><br>KEITH A. HILL,<br><br>                    Defendant. | **8:24-CR-15**<br><br><br><br>**MEMORANDUM AND ORDER ON DEFENDANT'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255** |

This matter is before the Court on petitioner Keith A. Hill's *pro se* Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Filing 101. On April 30, 2025, the Court sentenced Hill to a cumulative term of 194 months of incarceration after he pleaded guilty to Hobbs Act robbery, brandishing a firearm during and in relation to a crime of violence, and being a felon in possession of a firearm. Filing 98 (Text Minute Entry); Filing 99 (Judgment). Hill then timely filed the present motion asserting nine grounds for habeas relief. Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, the Court conducted an initial review of Hill's motion. Filing 103. The Court determined that Hill was not entitled to relief on Ground Seven, which alleged that "the conviction for brandishing a firearm in furtherance of a crime of violence under § 924(c) is legally invalid, as Hobbs Act robbery no longer qualifies categorically as a 'crime of violence,'" and cited *United States v. Taylor*, 596 U.S. 845 (2022). Filing 101 at 3–4. The Court explained that Ground Seven failed because Hill was not charged with *attempted* Hobbs Act Robbery—the crime at issue in *Taylor*—but with completed Hobbs Act Robbery, which is a crime of violence. Filing

103 at 2 (citing *Green v. Garland,* 79 F.4th 920, 923 (8th Cir. 2023)). The Court ordered the Government to respond to Hill's remaining allegations, which the Government has done. Filing 113. The Government also filed an evidentiary index in support of its response. *See* Filing 114 through Filing 114-5. Hill subsequently filed a reply brief addressing the Government's arguments and raising new grounds for habeas relief. Filing 117. Because Hill has not presented any viable claims for habeas relief, his motion is denied and no evidentiary hearing is required.

## I.  BACKGROUND

In January 2024, the grand jury returned an Indictment charging Hill with 13 crimes: seven counts of Hobbs Act robbery in violation of 18 U.S.C. § 1951 and 18 U.S.C. § 2; five counts of brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2; and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), 18 U.S.C. § 924(a)(8), and 18 U.S.C. § 2. Filing 1. Hill's codefendant, Wayne D. Rolling, was named in all seven counts of Hobbs Act robbery, all five counts of brandishing a firearm in furtherance of a crime of violence, and a separate single count of being a felon in possession of a firearm. Filing 1. Hill and Rolling were accused of committing a series of robberies in Omaha, Nebraska, targeting hotels, dollar stores, convenience stores, and a coffee shop. Pursuant to a Rule 11(c)(1)(C) plea agreement, Hill pleaded guilty to three of the 13 charges against him and was convicted of committing Hobbs Act robbery of a Family Dollar store (Count VI), brandishing a firearm in furtherance of that robbery (Count VII), and being a felon in possession of a firearm (Count XIII). Filing 88 (Plea Agreement); Filing 99 (Judgment). The Government agreed to dismiss the remaining charges against Hill. Filing 88 at 1. Hill's plea agreement contemplated that he would receive a total sentence of 162 to 216 months and that his sentence would include an 84-month consecutive sentence required by his conviction on Count VII. Filing 88 at 4. At sentencing, Hill's

guideline custody range was calculated to be 63 to 78 months of incarceration on both Count VI and Count XIII, recommended to be served concurrently. Filing 96 at 34; Filing 97 at 1. Hill's calculations also included a mandatory 84-month sentence for Count VII to be served consecutive to his sentences on the other counts, resulting in a total range of 147 to 162 months. Filing 96 at 34; Filing 97 at 1.

On April 30, 2025, the Court accepted Hill's Rule 11(c)(1)(C) plea agreement and sentenced him to a total term of 194 months of incarceration: 110 months on Count VI and 110 months on Count XIII to be served concurrently, and 84 months on Count VII to be served consecutive to the sentences on Counts VI and XIII. Filing 98 (Text Minute Entry); Filing 99. The Court also sentenced Hill to a term of three years of supervised release on Counts VI and XIII and a term of five years of supervised release on Count VII, all to be served concurrently. Filing 98; Filing 99. Following his sentencing, Hill filed this Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255. Filing 101. Of the nine grounds for relief asserted in Hill's motion, eight are presently before the Court.[1] All eight remaining grounds assert that Hill's attorney, A. Michael Bianchi, provided ineffective assistance of counsel. Specifically, Hill alleges that Bianchi failed to file a motion to suppress (Ground One), failed to investigate (Ground Two), miscalculated Hill's sentencing guidelines (Ground Three), failed to file a motion to "reopen" the pretrial motion deadline (Ground Four), failed to participate in pretrial defense preparation (Ground Five), failed to object to Hill's sentence as disproportionate to that of his codefendant (Ground Six), employed coercive tactics to pressure Hill into pleading guilty (Ground Eight), and failed to file a motion to dismiss the Indictment for Speedy Trial violations (Ground Nine). The Court will consider each claim in turn.

---

[1] As the Court has already noted, the Court previously dismissed Ground Seven because it plainly appeared that Hill was not entitled to relief on that claim. Filing 103 at 2.

## II.  ANALYSIS

### A.  Applicable Standards

Hill brings his motion pursuant to 28 U.S.C. § 2255, which permits federal prisoners to ask the sentencing court to "vacate, set aside, or correct" a sentence upon a showing that "the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack[.]" 28 U.S.C. § 2255(a). "Section 2255 is an outgrowth of the historic habeas corpus powers of the federal courts as applied to the special case of federal prisoners." *Jones v. Hendrix*, 599 U.S. 465, 472 (2023); *see also Odie v. United States*, 42 F.4th 940, 944 (8th Cir. 2022) ("Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." (internal quotation marks and citations omitted)). Relief under 28 U.S.C. § 2255 is limited, as it "does not encompass all claimed errors in conviction and sentencing." *Meirovitz v. United States*, 688 F.3d 369, 370 (8th Cir. 2012). "A § 2255 motion can be dismissed without a hearing if '(1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Tinajero-Ortiz v. United States*, 635 F.3d 1100, 1105 (8th Cir. 2011) (quoting *Sanders v. United States*, 341 F.3d 720, 722 (8th Cir. 2003)). Put differently, "[n]o hearing is required . . . where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *Franco v. United States*, 762 F.3d 761, 763 (8th Cir. 2014) (internal quotation marks and citations omitted).

All eight of the claims remaining in Hill's motion turn on allegations of ineffective assistance of counsel. Under the Supreme Court's test for ineffective assistance of counsel set forth in

*Strickland v. Washington*, 466 U.S. 668, 686 (1984), courts consider "whether counsel's performance was deficient, and if so, whether prejudice resulted." *United States v. Harris*, 83 F.4th 1093, 1097 (8th Cir. 2023) (internal quotation marks and citation omitted). "Deficient performance is that which falls below the range of competence demanded of attorneys in criminal cases." *O'Neil v. United States*, 966 F.3d 764, 770 (8th Cir. 2020) (quoting *Bass v. United States*, 655 F.3d 758, 760 (8th Cir. 2011)). "Only a performance 'outside the wide range of reasonable professional assistance' is constitutionally deficient." *Id.* at 771 (quoting *Love v. United States*, 949 F.3d 406, 410 (8th Cir. 2020)). To demonstrate prejudice, "a 'defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Paulson v. Newton Corr. Facility, Warden*, 773 F.3d 901, 904 (8th Cir. 2014) (quoting *Strickland*, 466 U.S. at 694). "The likelihood of a different outcome . . . 'must be substantial, not just conceivable.'" *Donelson v. Steele*, 16 F.4th 559, 570 (8th Cir. 2021) (quoting *Harrington v. Richter*, 562 U.S. 86, 112 (2011)). "Failure to establish either *Strickland* prong is fatal to an ineffective-assistance claim." *Worthington v. Roper*, 631 F.3d 487, 498 (8th Cir. 2011).

**B.   Hill's Claims**

*1.   Ground One: Failure to File a Motion to Suppress*

In his first ground for habeas relief, Hill argues that his counsel "rendered constitutionally ineffective assistance by failing to file a motion to suppress the unlawful search of Mr. Hill's residence." Filing 101 at 1–2. Hill contends that "officers conducted a warrantless search of a clothes dryer and seized a firearm prior to obtaining a search warrant—an unlawful act in violation of Mr. Hill's Fourth Amendment rights"—and he claims that his counsel's failure to challenge the seizure of that firearm, as well as the "warrantless search of Mr. Hill's home," "prejudiced the defense and undermines confidence in the outcome." Filing 101 at 5, 7. Hill cites *Kimmelman v. Morrison*, 477

U.S. 365 (1986), and *Mapp v. Ohio*, 367 U.S. 643 (1961), as "controlling precedent requiring exclusion" of the evidence obtained during the search. Filing 101 at 7. The Government disagrees and points the Court to an affidavit from Bianchi stating his belief that "[t]here was simply no basis with which to file" a motion to suppress, to the search warrant authorizing law enforcement to search for "[a]ny and all firearms" located in the residence to be searched, and to the Omaha Police Department's Receipt and Inventory of property seized during the execution of the search warrant which included a "Taurus G2 9mm hand gun" seized from a dryer. Filing 113 at 6–7; Filing 114-3 at 3–4; Filing 114-4 at 10; Filing 114-5 at 1.

"Where counsel's failure to competently litigate a suppression issue is the focus of the ineffective assistance claim, to demonstrate prejudice, the petitioner must 'also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" *Hogan v. Kelley*, 826 F.3d 1025, 1028 (8th Cir. 2016) (quoting *Kimmelman*, 477 U.S. at 375). Here, Hill has not met his burden to prove that his Fourth Amendment claim is meritorious, so Ground One fails for lack of prejudice. The Fourth Amendment claim underlying Ground One is that "the search of Mr. Hill's home" and the "seizure of a firearm" were "warrantless." Filing 101 at 2, 7. Despite Hill's belief that the search and seizure were warrantless, the files and records of the case conclusively show that a judge of the County Court of Omaha, Douglas County, Nebraska, issued a search warrant for 1506 Military Avenue and authorized law enforcement to seize "[a]ny and all firearms (handgun, pistol, revolver, rifle, shotgun)" found within the residence. Filing 114-4 at 8–11. Significantly, Hill has not argued that the search warrant was unconstitutional, just that there was no warrant in the first place. Hill's allegations in Ground One therefore "cannot be accepted as true because they are contradicted by the record." *Walker v. United States*, 810 F.3d 568, 580 (8th Cir. 2016) (internal quotation marks

and citation omitted). Moreover, Bianchi stated in his affidavit his belief that "Mr. Hill did not have any basis with which to file" a motion to suppress because "officers obtained a lawful search warrant for the residence (which belonged to Hill's girlfriend, Chantel Parker)" and "saw Hill retreat into the house that they searched when they approached Rolling and Hill for questioning." Filing 114-3 at 3–4. Given the existence of a search warrant and the fact that Hill has not challenged that search warrant, the Court concludes that Hill's counsel was "not ineffective for failing to pursue a motion to suppress that [counsel] reasonably believe[d] would be futile." *Anderson v. United States*, 762 F.3d 787, 794 (8th Cir. 2014).

      2.   *Ground Two: Failure to Investigate*

In Ground Two, Hill asserts that his counsel "failed to conduct a reasonable pretrial investigation or retain a private investigator to identify favorable witnesses and explore viable defenses." Filing 101 at 2. Hill particularly takes issue with Bianchi's alleged failure to "investigate the case, review discovery, retain expert witnesses, or interview exculpatory witnesses." Filing 101 at 7. Hill claims that as a result of his counsel's alleged shortcomings, his "ability to make an informed decision regarding trial or plea" was "undermin[ed]" and there was a "loss of potentially exculpatory evidence." Filing 101 at 2, 7. In response, the Government argues that Hill's claims are "baseless" and "erroneous." Filing 113 at 8, 9. The Government contends that Bianchi's investigation was reasonable and notes that Hill has provided no evidence demonstrating how additional investigation would have changed the outcome of Hill's case. Filing 113 at 8–9. Also, the Government argues, Hill's admissions in his Petition to Enter a Plea of Guilty, Filing 87, contradict his "bald complaints" regarding the relationship between Bianchi's investigation and Hill's decision to plead guilty. Filing 113 at 9.

The first problem with Ground Two is that Hill has not alleged "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Holder v. United States*, 721 F.3d 979, 987 (8th Cir. 2013). Hill claims that his counsel failed to investigate, failed to hire a private investigator, failed to review discovery, failed to retain expert witnesses, and failed to interview exculpatory witnesses, but he does not provide any details supporting those allegations. For instance, Hill has not identified which witnesses his counsel failed to investigate, what exculpatory evidence they would have provided, or what type of expert his counsel should have retained. He has not referenced any of the viable defenses he believes his counsel should have considered, nor has he elaborated on his counsel's alleged failure to review or produce discovery. Hill's allegations are "conclusions rather than statements of fact," *Walker*, 810 F.3d at 580 (internal quotation marks and citation omitted), and they are insufficient to "overcome the strong presumption that counsel's performance was reasonable," *Dilang Dat v. United States*, 983 F.3d 1045, 1048 (8th Cir. 2020) (internal quotation marks and citation omitted).

*Strickland* provides that "an attorney must conduct more than a cursory investigation." *Thomas v. United States*, 737 F.3d 1202, 1207 (8th Cir. 2013); *see Strickland*, 466 U.S. at 691 ("In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690); *see also United States v. Staples*, 410 F.3d 484, 488 (8th Cir. 2005) ("The decision not to call a witness is a virtually unchallengeable decision of trial strategy[.]" (internal quotation marks and citation omitted)). In contrast to Hill's conclusory statements in Ground Two, there is evidence in the record demonstrating that Bianchi's investigation into Hill's case was more than cursory. Although the

8

volume of discovery materials "was rather large" and there were some initial discovery-related issues, Bianchi and his office staff reviewed the discovery materials, including multiple videos related to Hill's case. Filing 114-3 at 1–2, 4. Bianchi contacted Hill's girlfriend, and she confirmed that while she would testify truthfully if subpoenaed, she was not interested in testifying. Filing 114-3 at 2, 4. Bianchi explained that his office considered a defense strategy based "on the notion that the Government might not be able to prove that Mr. Hill was involved in these robberies," and Bianchi reviewed "charts and PowerPoint documents" with Hill to show him "the strengths and weaknesses of his case." Filing 114-3 at 2, 4. Although Bianchi's investigation was admittedly limited, *see* Filing 114-3 at 4, the files and records of this case suggest that Bianchi made "reasonable investigations" or made "a reasonable decision that ma[de] particular investigations unnecessary." *Strickland*, 466 U.S. at 691. Also, as the Government points out, Hill's answers to four questions in his Petition to Enter a Plea of Guilty—answers that he stated he truthfully and voluntarily made after having an opportunity to ask his counsel any questions—indicate that Hill had enough time to talk with Bianchi, that he told Bianchi everything about his case, that he was satisfied with the job Bianchi did for him, and that he had no objections to the way Bianchi represented him. Filing 87 at 1–2; Filing 113 at 9; Filing 114-1 at 17; Filing 106 at 17.

The second problem with Ground Two is that even if Hill had met his burden to show that his counsel's performance was deficient, Hill still has not shown that he was prejudiced by that performance. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Covington v. United States*, 739 F.3d 1087, 1090 (8th Cir. 2014) (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). Hill has made no such showing here. He "has not demonstrated or even alleged" that had Bianchi investigated further into undefined topics or

9

interviewed unidentified witnesses, Hill "would not have pleaded guilty and would have demanded a trial." *Id.* Hill makes a passing claim that his counsel's alleged deficiencies "undermin[ed] Mr. Hill's ability to make an informed decision regarding trial or plea," but this claim standing alone does not establish a substantial likelihood that Hill would have gone to trial. *Donelson*, 16 F.4th at 570 ("The likelihood of a different outcome, however, must be substantial, not just conceivable." (internal quotation marks and citations omitted)). Furthermore, as the Court discusses in detail in Section II.B.7 below, Hill's claim that his guilty plea was involuntary and unknowing is contradicted by the record—particularly his answers to the Court's questions during his change of plea hearing. *See Thompson v. United States*, 872 F.3d 560, 567 (8th Cir. 2017) (looking to "contemporaneous evidence," including the petitioner's statements at his change of plea hearing, and concluding that the evidence was "substantially to the contrary" of the petitioner's ineffective assistance of counsel claim). For these reasons, Ground Two fails.

### 3. *Ground Three: Miscalculation of the Sentencing Guidelines*

In Ground Three, Hill claims that his counsel "misinformed" him that "he qualified as a career offender under the United States Sentencing Guidelines" and "that he faced a sentencing range of 162 to 216 months as a result." Filing 101 at 5. This is the sentencing range contemplated by Hill's Rule 11(c)(1)(C) plea agreement. Filing 88 at 4. Hill notes, however, that his Revised Presentence Investigation Report (PSR), Filing 96, later revealed that his "correct advisory range was 63 to 78 months, plus a mandatory consecutive 84-month sentence for the § 924(c) brandishing charge." Filing 101 at 5. According to Hill, he "accepted a plea agreement under the false premise that he was facing a significantly higher sentencing exposure at trial" when in reality he "did not, in fact, qualify as a career offender." Filing 101 at 5. Hill argues that his counsel's "inaccurate legal advice" "materially affected the plea process and ultimate sentence." Filing 101 at 2, 5. The

Government counters that Hill's claim is "erroneous," not Bianchi's advice. Filing 113 at 9. The Government presents three reasons why it believes Ground Three fails: (1) "an incorrect guideline estimate does not justify habeas relief"; (2) "Hill understood that by entering into the *Plea Agreement*, he could not challenge a sentence imposed outside of the guideline range he expected"; and (3) "Hill's myopic view of the *Plea Agreement* ignores his much higher sentencing exposure had he been convicted at trial." Filing 113 at 9 (emphasis in the original).

Some additional background information is pertinent to the Court's analysis of Ground Three. As the Court has already mentioned, Hill was indicted on 13 counts: seven counts of Hobbs Act robbery, five counts of brandishing a firearm in furtherance of a crime of violence, and one count of being a felon in possession of a firearm. Filing 1. Under 18 U.S.C. § 1951, Hill faced a term of imprisonment of "not more than twenty years" for each of the Hobbs Act robbery charges. 18 U.S.C. § 1951(a). Hill faced a sentence of "not more than 15 years" for the felon in possession of a firearm charge. 18 U.S.C. § 922(g); 18 U.S.C. § 924(a)(8). For the five brandishing counts, Hill faced a term of imprisonment of "not less than 7 years" for each count of conviction, with each 7-year sentence to be imposed consecutively. 18 U.S.C. § 924(c)(1)(A)(ii). Thus, if Hill had gone to trial on all the charges against him and had been found guilty of all five brandishing counts, he would have faced a mandatory sentence of 35 years (or 420 months) to be imposed consecutively to any other sentence for the eight remaining counts. When Hill pleaded guilty to three charges— one Hobbs Act robbery charge, one brandishing charge, and the felon in possession charge—he did so pursuant to a Rule 11(c)(1)(C) plea agreement that established a sentencing range of 162 to 216 months and accounted for the 84-month consecutive term required by the brandishing conviction. Filing 88 at 4. Based on the statutory requirement that Hill serve 7 consecutive years for each brandishing conviction and based on the simple fact that the high-end of his plea agreement (216

months) is far less than the sentence he would have been exposed to if he was convicted of all five brandishing counts at trial (420 months), Hill's claim that he "accepted a plea agreement under the false premise that he was facing a significantly higher sentencing exposure at trial" is "inherently incredible." *Walker*, 810 F.3d at 580. Even before considering Hill's allegations regarding the career offender guideline, it is clear that Hill's sentencing exposure at trial was significantly higher than his sentencing exposure under the Rule 11(c)(1)(C) plea agreement.

The Court now turns to Hill's allegation that he was "erroneously advised" that "he qualified as a career offender, resulting in acceptance of a plea based on a grossly inflated guideline range." Filing 101 at 7. Although there is no question that Hill ultimately did not qualify as a career offender under section 4B1.1 of the United States Sentencing Guidelines, *see* Filing 96 at 24 (PSR), it appears that Hill and his counsel addressed the possibility of Hill qualifying as a career offender as part of their plea discussions, Filing 101 at 7; Filing 114-3 at 2. In his affidavit, Bianchi states that "[a]t first, it was determined that Mr. Hill, like his co-defendant Mr. Rolling, would be classified as a career offender under federal Sentencing Guidelines" and that "[s]uch a sentence would have forced Mr. Hill to serve a minimum of 262 months in prison." Filing 114-3 at 2. However, Bianchi avers, "[i]t was ultimately determined that [Hill] was not a career offender because one of his two more recent felony convictions that earned him prison time did not involve intent to deliver or delivery of a controlled substance, but mere possession of it." Filing 114-3 at 2. According to Bianchi, "plea negotiations continued, and ultimately, Mr. Hill was offered" the Rule 11(c)(1)(C) plea agreement that the Court accepted at sentencing—an agreement that "was substantially less than two earlier plea offers and did not involve the career offender guidelines that [Bianchi and Hill] were worried about before." Filing 114-3 at 2. Bianchi's statement that the Rule 11(c)(1)(C) plea agreement in this case did not include career offender calculations contradicts Hill's allegation that he "was

12

misinformed by counsel that he qualified as a career offender under the United States Sentencing Guidelines and was advised that he faced a sentencing range of 162 to 216 months." Filing 101 at 5. Hill's allegation is also contradicted by the math: if Hill had been a career offender, as initially believed, his guideline custody range would have been 262 months to 327 months after the provisions of U.S.S.G. § 4B1.1(c)(2) had been applied. Hill's plea agreement establishes a sentencing range that is well below the low-end of what his guidelines would be if he were a career offender, meaning the plea agreement does not actually include a career offender enhancement. *See also* Filing 75 (Government's Motion to Continue Trial explaining that counsel for the Government and for Hill agreed that Hill was likely not a career offender and were negotiating a plea agreement based on that understanding).Thus, Hill's allegation that his plea agreement was based on and derived from "erroneous" advice that he was a career offender is "contradicted by the record." *Walker*, 810 F.3d at 580. Furthermore, even if Bianchi had advised Hill that he was a career offender, the Eighth Circuit Court of Appeals has specifically held in the context of a petitioner's complaint that his counsel improperly advised him that he was a career offender that "counsel's incorrect estimate of a sentencing range was not ineffective assistance of counsel." *United States v. Nesgoda*, 559 F.3d 867, 870 n.2 (8th Cir. 200) (citing *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994)). Ground Three is therefore denied.

  4. *Ground Four: Failure to File a Motion to Reopen the Pretrial Motion Deadline*

  Ground Four asserts that "[w]hile Mr. Hill was in state custody, counsel failed to file a motion to reopen expired pretrial motion deadlines, forfeiting essential opportunities to challenge the indictment and suppression issues." Filing 101 at 3. Hill alleges that when he "was finally taken into federal custody, he was informed by counsel that the time to file motions had already expired," and "[i]nstead of seeking to reopen motion deadlines or exploring suppression or evidentiary issues,

counsel pivoted directly to plea negotiations." Filing 101 at 5. The Government argues that Ground Four should be dismissed because Hill "fails to allege with specificity and support what motions Bianchi should have filed and what relief would have assisted him." Filing 113 at 11. The Court agrees.

First, the Court's review of the docket reveals that Bianchi did file one motion to extend the pretrial motion deadline, which the magistrate judge granted. Filing 35 (Unopposed Motion to Extend Deadline for Pretrial Motions); Filing 36 (Order). To the extent Hill would have had his counsel request another extension of the pretrial motion deadline, Hill has not alleged what particular pretrial motions his counsel should have filed beyond a general reference to "essential opportunities to challenge the indictment and suppression issues." Filing 101 at 3. The Court has already addressed Hill's claim that Bianchi should have filed a motion to suppress in Section II.B.1. above, and the Court will address Hill's claim that Bianchi should have filed a motion to dismiss the Indictment in Section II.B.8. below. Seemingly separate from his Ground Four argument, Hill alleges that his counsel "failed to file a motion in limine to exclude a mismatched firearm—one not tied to the offense by serial number." Filing 101 at 6. Assuming this motion in limine is one Hill believes Bianchi should have filed within a reopened pretrial motion deadline, Hill has only provided this single conclusory sentence about "a mismatched firearm." *See Walker*, 810 F.3d at 580 (explaining that "allegations cannot be accepted as true" when they are "conclusions rather than statements of fact"). Hill has not identified what firearm he believes was mismatched or how the firearm may have been mismatched, much less what affect the mismatched firearm may have had on his case. Without any factual support, the Court cannot accept as true Hill's allegations regarding a "mismatched firearm" or any associated motion in limine.

Second, Hill has not demonstrated a reasonable probability that any pretrial motion would have been successful. *See DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) ("However, if there is no reasonable probability that the motion would have been successful, DeRoo cannot prove prejudice."). As the Court has already explained, Hill has not met his burden to show that his Fourth Amendment claim regarding the "warrantless" search of his residence or the "warrantless" seizure of a firearm from the residence is meritorious, so he has not demonstrated a reasonable probability that a pretrial motion to suppress would have been successful. As the Court will explain in more detail later, Hill also has not shown a reasonable probability that a pretrial motion to dismiss the Indictment would have been successful. Nor has Hill shown a reasonable probability that a pretrial motion in limine regarding a "mismatched firearm" would have been successful, primarily because Hill has not alleged any facts about the mismatched firearm or its impact on his case. By failing to identify what particular pretrial motions Hill would have had his counsel file within a reopened deadline or to explain how those motions, if filed, would have had a substantial likelihood of changing the outcome of Hill's case, Hill has failed to overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Haney v. United States*, 962 F.3d 370, 374 (8th Cir. 2020) (quoting *Strickland*, 466 U.S. at 689). Accordingly, Ground Four is denied.

5. *Ground Five: Failure to Participate in Pretrial Defense Preparation*

In Ground Five, Hill alleges that his counsel "failed to engage in meaningful communication with Mr. Hill during the pretrial phase, did not provide discovery materials, and failed to develop any coherent defense strategy." Filing 101 at 3. Hill describes his counsel's alleged performance as an "abandonment of duty" and claims that "[d]uring the more than six months that Mr. Hill was in state custody, appointed counsel failed to initiate any contact with him or pursue pretrial litigation."

15

Filing 101 at 3, 5. Ground Five contains many claims that the Court has already addressed, including claims about defense strategy, discovery, and pretrial motion practice. To the extent the Court has already ruled on Hill's arguments as they appeared in his other habeas ground, those arguments are denied here for the same reasons. The only "new" claim in Ground Five appears to be Hill's allegation that his counsel "failed to initiate any contact with him" while Hill was in state custody. This claim is conclusory and unsupported by any factual allegations, and furthermore it is contradicted by Bianchi's statement that he visited Hill "at least twelve (12) times," mostly "at the Saunders County Jail in Wahoo (one visit was at the state Department of Corrections penitentiary in Lincoln)." Filing 114-3 at 4. Most importantly, Hill has not demonstrated that but for his counsel's alleged lack of communication, Hill would not have pleaded guilty and would have instead insisted on going to trial. See Covington, 739 F.3d at 1090. In the Court's discussion of Ground Two above, the Court addressed Hill's passing claim that his counsel's alleged "[f]ailure to investigate or prepare a defense" undermined Hill's "ability to make an informed decision regarding trial or plea" and determined that Hill's claim—without more and in light of his statements during his change of plea hearing—does not establish a substantial likelihood that he would have gone to trial. Donelson, 16 F.4th at 570. Given the overlapping allegations in Grounds Two and Five, the Court reiterates its conclusion here and finds that Ground Five fails for lack of prejudice.

     6.   *Ground Six: Failure to Object to a Sentencing Disparity*

Hill's sixth asserted ground for habeas relief is a claim that he "received a disproportionately harsh sentence compared to his co-defendant, despite comparable or lesser culpability," and that his counsel "failed to raise any objection or file a motion under 18 U.S.C. § 3553(a)." Filing 101 at 3. Hill argues that his resulting sentence was "manifestly unjust" and that his counsel's failure "to object to the significantly more lenient sentence imposed on Mr. Hill's similarly situated co-

defendant" violated "the principles of parity and fair sentencing." Filing 101 at 3, 8. In response, the Government notes that Bianchi did argue at Hill's sentencing hearing that Hill's sentence should be consistent with that of his codefendant, Rolling. Filing 113 at 13. The Government explains that the Court heard Bianchi's argument and "provided a reasoned basis for sentencing Hill as it did." Filing 113 at 13. The Government also points out that Hill and Rolling have different criminal history categories, with Hill being Category VI while Rolling is Category IV. Filing 113 at 13–14.

As with Ground Three above, the Court finds that some additional background information is necessary for the Court's analysis of Ground Six. When the grand jury returned the Indictment in this case, Hill and Rolling were charged with the same seven Hobbs Act robbery counts and the same five brandishing counts. Filing 1. They were each charged with being a felon in possession of a firearm, though those counts were separate from each other. Filing 1 at 7. Shortly after the Indictment was returned, this case was assigned to the undersigned judge as to both defendants. Filing 6. In October of 2024, Rolling entered a guilty plea to Counts I and II of the Indictment and after the Court accepted his guilty plea, Rolling was convicted of committing Hobbs Act robbery of an NP Mart convenience store (Count I) and brandishing a firearm in furtherance of that robbery (Count II). Filing 53 (Text Minute Entry); Filing 54 (Findings and Recommendation on Plea of Guilty); Filing 62 (Order Adopting Findings and Recommendation). Rolling pleaded guilty pursuant to a Rule 11(c)(1)(C) plea agreement in which the parties agreed that Rolling would receive a guideline sentence and that the Government would dismiss the remaining counts against him, including the felon in possession of a firearm charge (Count XIV), at sentencing. Filing 58. Rolling's plea agreement also contained the parties' agreement "that if [Rolling] is determined to be a career offender pursuant to U.S.S.G. § 4B1.1(a), the applicable offense level shall be determined pursuant to U.S.S.G. § 4B1.1(b). Furthermore, [Rolling] will be in Criminal History Category VI." Filing 58

17

at 4. Rolling's Presentence Investigation Report did in fact determine that Rolling was a career offender under the Sentencing Guidelines and as a result, his total guideline range was calculated to be 262 to 327 months (including the mandatory 84-month consecutive sentence on Count II). Filing 90 at 17.

Rolling's sentencing hearing was set for January 15, 2025, before the undersigned judge. Filing 55. Prior to the sentencing hearing, Rolling's defense attorney filed an objection to Rolling's PSR and argued that the 2021 Guidelines Manual should have been used to calculate Rolling's guidelines instead of the 2024 Guidelines Manual. Filing 69 at 1. Rolling further argued that the career offender designation was improper under the 2021 Guidelines Manual because Hobbs Act robbery was not a crime-of-violence predicate under U.S.S.G. § 4B1.2 of the 2021 manual. Filing 69 at 1–2. Rolling contended that without the career offender enhancement, his guideline custody range for Count I should have been 37 to 46 months, with a mandatory 84-month sentence to be imposed consecutively for Count II. Filing 69 at 2. In response to Rolling's objection, the Government filed a motion for upward variance and suggested that "[s]hould the Court agree with Rolling that he is not a career offender," the Government would "respectfully request a sentence significantly higher than what Rolling's guideline will be if he is not a career offender." Filing 73; Filing 74 at 1. Still prior to the sentencing hearing, Rolling's counsel notified the Court and the Government of his intent to argue that the Government had breached the plea agreement—in which the Government had agreed that Rolling should receive a guideline sentence—by moving for an upward variance. The Government then moved to withdraw its motion and supporting memorandum. Filing 79. During Rolling's sentencing hearing, his counsel contended that the Government had breached the plea agreement, orally moved to strike the Government's documents, and argued that the appropriate remedy was the undersigned judge's recusal from the case as to

18

defendant Rolling. The Court took the issue under advisement and continued Rolling's sentencing. Filing 80 (Text Minute Entry). The Court then entered a written order granting Rolling's oral motions to strike and recuse. Filing 82.

Rolling's case was subsequently reassigned to Chief Judge Robert F. Rossiter. Filing 83. On February 19, 2025, Rolling appeared before Judge Rossiter for sentencing. Filing 89 (Text Minute Entry). Judge Rossiter sustained Rolling's objections to his PSR, finding that the 2021 Guidelines Manual applied and that Rolling was not a career offender under those guidelines. Filing 90 at 16–17, 36. Without the career offender enhancement, Rolling's criminal history category was IV instead of VI. Filing 90 at 36. With a total offense level of 17 and Criminal History Category IV, Rolling's guideline custody range was 37 to 46 months on Count I and at least 84 months consecutive on Count II. Filing 90 at 36. Judge Rossiter accepted Rolling's Rule 11(c)(1)(C) plea agreement and imposed a guideline sentence of 46 months on Count I and 84 months of Count II, for a total sentence of 130 months. Filing 89; Filing 92 (Judgment). Judge Rossiter also sentenced Rolling to a term of three years of supervised on Count I and five years on Count II, to be served concurrently. Filing 89; Filing 92 (Judgment).

Hill's case remained with the undersigned judge, as it does to this day. On January 30, 2025—between Rolling's two sentencing hearings—Hill entered his guilty plea to Counts VI, VII, and XIII pursuant to his Rule 11(c)(1)(C) plea agreement contemplating a sentencing range of 162 to 216 months. Filing 85 (Text Minute Entry). On April 30, 2025, the Court accepted Hill's plea agreement and sentenced him to a total term of 194 months of incarceration—110 months on Counts VI and XIII each, to be served concurrently, and 84 months on Count VII to be served consecutively. Filing 98 (Text Minute Entry); Filing 99 (Judgment). Hill's total offense level was 19, he was

Criminal History Category VI, he was not deemed a career offender, and he pleaded guilty to three

counts compared to Rolling's two. Filing 96 at 24, 34.

With this background in mind, the Court turns to Hill's claim in Ground Six. First, the Court

considers Hill's assertion that his counsel "failed to object to the significantly more lenient sentence

imposed on Mr. Hill's similarly situated co-defendant." Filing 101 at 8. This claim is plainly

"contradicted by the record." *Walker*, 810 F.3d at 580. The transcript from Hill's sentencing hearing

shows that during allocution Bianchi made the following argument:

> I'm gonna ask the Court to give a sentence at the low end of the range if for no other
> reason, Judge, than because you have two similarly situated defendants who partook
> in the same set of criminal activity who have very similar criminal histories and one
> of them got 130 months. My client is simply asking this Court to go ahead and give
> a sentence that's at least somewhat consistent with that which would be 162.

Filing 114-2 at 11; Filing 107 at 11. Bianchi not only identified the sentence Rolling received but

he also asked the Court to consider what he believed to be similarities between Rolling's case and

Hill's case in reaching a sentence. Thus, Hill's claim that his counsel "failed to object to the

substantial sentencing disparity between Mr. Hill and his co-defendant Wayne D. Rolling" is

without merit. The Court ultimately imposed a sentence at the high-end of Hill's plea agreement

range and did so after acknowledging Rolling's sentence and explaining its reasons for imposing a

high-end sentence in Hill's case. Filing 114-2 at 14–17; Filing 107 at 14–17. Bianchi's assistance

was not ineffective just because his argument was unsuccessful. *See James v. State of Iowa*, 100

F.3d 586, 590 (8th Cir. 1996) ("Reasonable trial strategy does not constitute ineffective assistance

of counsel simply because it is not successful.").

Second, the Court considers Ground Six to the extent Hill asserts that his counsel was

ineffective because he "did not inform Mr. Hill that Hobbs Act robbery was categorically not a

crime of violence" and this is what led to the disparity between Rolling's and Hill's sentences. Filing

117 at 9. In his reply brief—seemingly in response to Bianchi's statement that one of the issues "relating to the sentence had to do with whether Mr. Hill's Hobbs Act robberies were a 'crime of violence' under the Guidelines," Filing 114-3 at 2—Hill claims that "if he had known . . . that Hobbs Act is not a crime of violence categorically he would not have signed a plea with a minimum/maximum exposure of 162 to 216 months when his actual exposure was less than 63 months." Filing 117 at 10. Hill entered into his plea agreement before Judge Rossiter decided that Rolling was not a career offender because Hobbs Act robbery was not a crime-of-violence predicate under the 2021 Guidelines Manual. However, the Court is wary of the connection Hill attempts to draw between Judge Rossiter's decision in Rolling's case and Hill's plea agreement. For one, Hill was not deemed a career offender, and as the Court explained in its analysis of Ground Three above, the sentencing range in his Rule 11(c)(1)(C) plea agreement was less than the range that would have been required by a career offender designation. Because Hill was never given the career offender enhancement and because the career offender enhancement was not factored into Hill's plea agreement, Judge Rossiter's decision that Hobbs Act robbery was not categorically a crime of violence under the career offender guideline in Rolling's case has no bearing on Hill's case. Therefore, even if the Court accepted as true Hill's allegation that Bianchi never informed him that Hobbs Act robbery was "categorically not a crime of violence,"[2] Hill would not be entitled to relief on that claim because it is immaterial to the facts and circumstances of Hill's case.

---

[2] In Ground Seven, which the Court has already dismissed, Hill argued that his conviction on Count VII — brandishing a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c)(1)(A)—was "legally invalid" because "Hobbs Act robbery no longer qualifies categorically as a 'crime of violence.'" Filing 101 at 3. If Hill is referring to Ground Seven and 18 U.S.C. § 924(c) in his reply brief when he claims that Bianchi did not inform him "that Hobbs Act is not a crime of violence categorically," that argument is rejected for the same reasons set forth in the Court's prior order. See Filing 103.

Moreover, Hill once again has not demonstrated or even alleged that he was prejudiced by the conduct he accuses Bianchi of committing in Ground Six. Although Hill claims that "he would not have signed a plea," he has not shown that he would not have pleaded guilty and would have insisted on going to trial, nor has he shown that "going to trial would have resulted in a lower sentence." *Covington*, 739 F.3d at 1090. Ground Six is therefore denied.

7.   *Ground Eight: Coercion During the Guilty Plea*

Ground Eight asserts that Hill's counsel "employed coercive tactics and misrepresented the strength of the government's case, pressuring Mr. Hill into accepting an unfavorable plea agreement." Filing 101 at 4. Hill argues that because of his counsel's alleged deficiencies, Hill's guilty plea was "involuntary, unknowing, and unintelligent, in violation of due process." Filing 101 at 4. Hill attributes the three following "coercive and fear-based" statements to his counsel:

"This is the last plea offer. The government wants no less than 15 years."

"I'm not filing any motions. We passed our deadline."

"If we go to trial, we're not going to win. You only have a 40% chance."

Filing 101 at 6. According to Hill, Bianchi "pressured Mr. Hill into pleading guilty by presenting false legal conclusions, overstating the risk of trial, and failing to provide accurate legal advice." Filing 101 at 7–8. The Government counters that "Bianchi did not use coercive tactics and did not force Hill to plead guilty" but instead "answered Hill's questions about the case and the *Plea Agreement*, and Hill chose to plead guilty under his own free will." Filing 113 at 14.

Simply put, the record does not support Hill's claim that his guilty plea—and his decision to accept the Rule 11(c)(1)(C) plea agreement—was unknowing and involuntary. Courts "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Meza-Lopez v. United States*, 929 F.3d 1041, 1044 (8th Cir. 2019) (quoting *Strickland,*

466 U.S. at 689). The Court strongly doubts that any of Hill's allegations place Bianchi's performance even near the edge of the wide range of reasonable professional assistance but the Court resolves Ground Eight on the second *Strickland* prong because Hill has not shown "that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.* (internal quotation marks and citation omitted). Hill asserts that Bianchi's allegedly deficient performance "influenc[ed] Mr. Hill's decision to accept an unfavorable plea" and "undermin[ed] Mr. Hill's ability to make an informed decision regarding trial or plea," but at no point does Hill ever claim that but for Bianchi's alleged conduct, Hill would not have pleaded guilty and would have gone to trial. Filing 101 at 2, 7. At most Hill indicates in his § 2255 motion that he would have preferred a plea agreement with different terms, but even this "expressed preference[ ]" is contradicted by "contemporaneous evidence" from Hill's change of plea hearing. *Thompson*, 872 F.3d at 567 ("But, '[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences.'" (quoting *Lee v. United States*, 582 U.S. 357, 369 (2017))).

During the change of plea hearing, this Court asked Hill numerous questions about his guilty plea and plea agreement and ensured that Hill understood the charges against him, the penalties he faced on those charges, the terms of his plea agreement, and the constitutional rights he gave up by pleading guilty. *See generally* Filing 114-1; Filing 106. The Court asked Hill whether he had voluntarily and truthfully answered each question in his Petition to Enter a Plea of Guilty, Filing 87, and Hill responded under oath that he had. Filing 114-1 at 17; Filing 106 at 17. The Court asked Hill whether he had read and voluntarily signed the plea agreement after fully discussing it with his attorney, and Hill responded that he had. Filing 114-1 at 17–18; Filing 106 at 17–18. Hill agreed on

the record with the Government's summary of the plea agreement, and he stated that he did not have any questions about the plea agreement. Filing 114-1 at 18–20; Filing 106 at 18–20. Hill stated that he freely and voluntarily gave up his constitutional rights and that he was freely and voluntarily pleading guilty to Counts VI, VII, and XIII of the Indictment. Filing 114-1 at 22–23; Filing 106 at 22–23. Hill also answered "Yes" when the Court asked him if he was fully satisfied with the representation provided and advice given to him by his lawyer. Filing 114-1 at 12; Filing 106 at 12. Hill's "representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings," and the Court does not find that Hill has overcome that barrier here. *Thompson*, 872 F.3d at 566.

Along the lines of Ground Eight, Hill claims in his reply brief that "the Court is at fault as well" because "[i]nstead of the Court engaging Mr. Hill in a meaningful dialogue, as required by Rule 11(b)(1)(G), to ensure that the defendant understood the critical or essential elements of the offense to which he was pleading guilty . . . the Court told Mr. Hill to ask those questions to his attorney 'only.'" Filing 117 at 10–11. This allegation is without merit and is plainly contradicted by the transcript of Hill's change of plea hearing. Following the Court's advisement of the elements of the charges against Hill and possible penalties Hill faced by pleading guilty to those charges, the Court asked Hill if he had any questions. Filing 114-1 at 11, 13–14; Filing 106 at 11, 13–14. Hill did have questions both times, so the Court allowed him to speak with his attorney. However, the Court did not refuse to answer Hill's questions, as Hill suggests in his reply brief. Instead, after Hill and Bianchi had finished their private discussions, the Court asked Hill if there was anything he wanted to "follow up" with the Court about. Filing 114-1 at 11, 14; Filing 106 at 11, 14. Both times Hill answered in the negative. *See* Filing 114-1 at 11, 14; Filing 106 at 11, 14. Hill even stated, "No.

It's okay. I trust my lawyer." Filing 114-1 at 11; Filing 106 at 11. For all these reasons, Ground Eight fails.

        8.   *Ground Nine: Failure to File a Motion to Dismiss the Indictment on Speedy Trial Grounds*

Like Grounds One and Four discussed previously, Ground Nine involves Bianchi's pretrial motion practice. In Ground Nine, Hill avers that Bianchi "failed to file a motion to dismiss the indictment after the expiration of statutory deadlines under the Speedy Trial Act, 18 U.S.C. § 3161." Filing 101 at 4. Hill claims that "[t]his omission prejudiced Mr. Hill's defense and violated his Sixth Amendment right to a speedy trial." Filing 101 at 4. Hill also takes issue with Bianchi's alleged failure "to object to unauthorized continuances." Filing 101 at 8. The Government argues that the Court should dismiss Ground Eight because it is contradicted by Bianchi's statements in his affidavit and by Hill's waiver of any speedy trial claim by pleading guilty. Filing 113 at 15. Furthermore, the Government contends, Hill has failed "to establish how he was prejudiced by any continuances." Filing 113 at 15.

The Court considers three aspects of Ground Nine. First, to the extent that Hill attempts to assert a substantive speedy trial claim, the Court concludes that he waived his right to do so when he pleaded guilty. *See Taylor v. United States*, 204 F.3d 828, 829 (8th Cir. 2000) (determining that the defendant "waived his right to raise any argument based on a violation of the Speedy Trial Act when he pleaded guilty" because he pleaded guilty "without ever having moved to dismiss the indictment on speedy trial grounds and without specifically reserving his right to appeal the speedy trial issue"); *see also* Filing 87 at 2–3 (acknowledging that by pleading guilty, Hill gave up his constitutional right to a speedy and public trial by jury); Filing 114-1 at 21 (same).

Second, the Court looks at Ground Nine from the perspective of an ineffective assistance of counsel claim based on Bianchi's decision to move for continuances. The Court has reviewed the docket and has identified seven motions to continue filed in this case as to Hill. On May 15, 2024, Bianchi filed a motion to extend the pretrial deadline, which the magistrate judge granted. Filing 35; Filing 36. On July 12, 2024, Bianchi filed a motion to continue that was denied without prejudice for failure to comply with the Court's local rules. Filing 42; Filing 43 (Text Order). On July 15, 2024, Bianchi filed an amended and unopposed motion to continue, which the magistrate judge granted. Filing 44; Filing 45. On October 1, 2024, Bianchi filed an unopposed motion to continue, which the Court granted. Filing 51; Filing 52. On October 30, 2024, Bianchi filed another unopposed motion to continue. Filing 61. The Court held a hearing on that motion and ultimately granted it. Filing 63 (Text Minute Entry); Filing 64. On December 17, 2024, Bianchi filed an unopposed motion to continue. Filing 65. The Court denied the motion without prejudice to reassertion on different grounds. Filing 67. On January 2, 2025, the Government filed a motion to continue that the Court granted after a hearing. Filing 75; Filing 77 (Text Minute Entry); Filing 78. Early in the case, there were also multiple motions to continue filed by Rolling's defense attorney and granted by the Court. *See* Filing 31; Filing 32; Filing 33; Filing 34; Filing 40; Filing 41.

Due to the conclusory nature of Hill's allegations in Ground Nine, the Court is unsure if Hill's reference to "unauthorized continuances" encompasses all of the continuances filed in this case—by his counsel, by Rolling's counsel, and by counsel for the Government—or just some. The only continuance that Hill addresses with any level of specificity is a "joint continuance" apparently filed by Bianchi after "the government's motion to continue was denied" and "without Mr. Hill's knowledge or consent" but based on the Court's review of the docket, there was only one motion to continue filed by the Government and the Court granted that motion. Filing 101 at 6; *see* Filing 78

(granting the Government's motion to continue trial as orally joined by the defendant). Regardless, Hill has not shown that he was prejudiced by his counsel's decisions to file the motions to continue, to not object to Rolling's motions to continue, or to join the Government's motion to continue. Hill's circumstances would have been substantially the same whether or not the continuances were sought or even granted: he would have had the option to either plead guilty prior to trial or go to trial. *See Donelson*, 16 F.4th at 570 (explaining that to meet the prejudice standard, "[t]he likelihood of a different outcome . . . must be substantial, not just conceivable" (internal quotation marks and citation omitted)).

Third and finally, the Court examines Ground Nine from the perspective of an ineffective assistance of counsel claim based on Bianchi's failure to file a motion to dismiss the Indictment "after the expiration of statutory deadlines under the Speedy Trial Act." Filing 101 at 4. The Court has already explained that for Hill to show that he was prejudiced by his counsel's failure to file a pretrial motion, he must demonstrate that there is a "reasonable probability that the motion would have been successful." *DeRoo*, 223 F.3d at 925. Hill has not done so here because there was no basis for Bianchi to file a motion to dismiss under the Speedy Trial Act. The Speedy Trial Act provides that when a defendant has entered a plea of not guilty, the defendant's trial "shall commence within seventy days from the filing date (and making public) of the information or indictment, or from the date the defendant has appeared before a judicial officer of the court in which such charge is pending, whichever date last occurs." 18 U.S.C. § 3161(c)(1). "However, 'the Act recognizes that criminal cases vary widely and that there are valid reasons for greater delays in particular cases. To provide the necessary flexibility, the Act includes a long and detailed list of periods of delay that are excluded in computing the time within which trial must start.'" *United States v. Harris-Franklin*, 146 F.4th 631, 637 (8th Cir. 2025) (quoting *Zedner v. United States*, 547 U.S. 489, 492 (2006)).

Those exclusions appear in 18 U.S.C. § 3161(h), and "the speedy trial clock runs only if none of § 3161(h)'s eight enumerated exclusions apply." *United States v. LaDeaux*, 152 F.4th 900, 902 (8th Cir. 2025) (quoting *United States v. Boyd*, 138 F.4th 1079, 1082 (8th Cir. 2025)).

In this case, each time the Court granted a continuance it did so pursuant to 18 U.S.C. § 3161(h)(7) after finding that the ends of justice served by granting the continuance outweighed the best interests of both the public and the defendants in a speedy trial. *See* Filing 32; Filing 34; Filing 36; Filing 41; Filing 45; Filing 52; Filing 64; Filing 78. This was true regardless of whether Hill's counsel, Rolling's counsel, or counsel for the Government sought the continuance. Because one of the Speedy Trial Act's enumerated exclusions applied each time this case was continued, Hill's speedy trial clock did not run during those intervals.[3] *See LaDeaux*, 152 F.4th at 902 ("[E]xclusions of time attributable to one defendant apply to all codefendants[.]" (quoting *United States v. Patterson*, 140 F.3d 767, 772 (8th Cir. 1998))). As a result, the "statutory deadlines under the Speedy Trial Act" did not "expir[e]," and any speedy trial argument raised by Bianchi in a motion to dismiss would have been without merit. Bianchi is not ineffective simply because he did not raise a meritless argument. *See Thomas v. United States*, 951 F.2d 902, 905 (8th Cir. 1991) ("Counsel's failure to raise these meritless issues does not constitute ineffective assistance."); *Rodriguez v. United States*, 17 F.3d 225, 226 (8th Cir. 1994) (per curiam) ("Thus, counsel's failure to advance a meritless argument cannot constitute ineffective assistance."). Ground Nine is denied.

---

[3] The Court has already found that Hill has not carried his burden to show that he was prejudiced by his attorney's performance regarding the continuances, as Hill has not shown that "a reasonable probability exists that, but for counsel's errors, the result of the proceeding would have been different." *DeRoo*, 223 F.3d at 925.

## C. Remaining Issues

There are a few remaining issues the Court must address. The first is Hill's argument that the "cumulative impact" of his counsel's alleged "deficiencies," as set forth in the eight habeas grounds addressed above, "meets both *Strickland* prongs." Filing 101 at 8. This is an attempt to aggregate the allegations in Hill's individual ineffective assistance of counsel claims, and it fails. The Eighth Circuit has "repeatedly recognized 'a habeas petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test.'" *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006) (quoting *Hall v. Luebbers*, 269 F.3d 685, 692 (8th Cir. 2002)). "[T]he cumulative effect of alleged trial counsel errors is not grounds for granting habeas relief." *Id.*

The second issue is Hill's claim that the "cumulative impact" of his counsel's alleged deficiencies "independently triggers a presumption of prejudice under *United States v. Cronic*, 466 U.S. 648, 659 (1984), where counsel fails entirely to subject the prosecution's case to adversarial testing." Filing 101 at 8. *Cronic* determined that the prejudice required for an ineffective assistance of counsel claim "may be presumed when the defendant experiences a 'complete denial of counsel' at a critical stage of his trial." *Sweeney v. United States*, 766 F.3d 857, 860 (8th Cir. 2014) (quoting *Cronic*, 466 U.S. at 659)). For example, "[p]rejudice is not required to be shown if counsel was either totally absent, or prevented from assisting the accused during a critical stage of the proceeding." *United States v Kehoe*, 712 F.3d 1251, 1254 (8th Cir. 2013) (internal quotation marks and citations omitted). The Eighth Circuit has explained that "[t]he trial is the paradigmatic critical stage." *Sweeney*, 766 F.3d at 860 (quoting *United States v. Turner*, 975 F.2d 490, 496 (8th Cir. 1992)). Courts typically only consider *Cronic*'s presumption of prejudice when a petitioner has challenged his representation at trial. *See Wright v. Van Patten*, 552 U.S. 120, 124 (2008)

29

("*Strickland* [ ] ordinarily applies to claims of ineffective assistance of counsel at the plea hearing stage."); *White v. Luebbers*, 307 F.3d 722, 728–29 (8th Cir. 2002) (considering and rejecting the presumption of prejudice based on defense counsel's performance during voir dire); *Sweeney*, 766 F.3d at 860 (considering and rejecting the presumption of prejudice based on defense counsel's brief absence during trial); *Kehoe*, 712 F.3d at 1254 (considering and rejecting the presumption of prejudice based on defense counsel's performance during voir dire).

Hill did not go to trial here, so his claims are properly analyzed under *Strickland* and, as the Court has explained above, they fail for lack of prejudice. Even if *Cronic*'s presumption of prejudice could be considered in Hill's case, he has not demonstrated an entitlement to that presumption. "In order for *Cronic*'s presumption of prejudice to apply . . . the failure of defense counsel must be complete." *Hunt v. Houston*, 563 F.3d 695, 706 (8th Cir. 2009). Even considering the four "examples" of Bianchi's alleged failure to "put the prosecution's case to meaningful adversarial testing" set forth in Hill's reply brief, the Court concludes that Hill has not shown that counsel was "denied entirely" or that "the assistance of counsel [was] denied entirely during a critical stage of the proceeding." *White*, 307 F.3d at 729; *see* Filing 117 at 13–15.

The third and final issue is that Hill raises various claims for the first time in his reply brief. For instance, Hill argues that the Court should "resentence Mr. Hill without Count 13 (felon in possession of a firearm) and Count 7 (brandishing a firearm in furtherance of a crime of violence)" because "there was no federal jurisdiction" for those charges. Filing 117 at 1, 7. Hill contends that his attorney was ineffective for failing to inform Hill that the Sentencing Guidelines "allow judges to grant a downward departure for youthful offenders who committed the instant offense or any of their past offenses while 25 years old or under." Filing 117 at 10, 14 ("Mr. Bianchi certainly miscalculated the Sentencing Guidelines which should have been calculated without 10 criminal

history points for offenses committed when he was 25 years old and under."). Hill also states that Bianchi "should have filed an appeal" addressing the question of whether Hobbs Act robbery is categorically a crime of violence, and he claims for the first time that Bianchi "prevailed upon Mr. Hill not to appeal this very same issue among others even though Mr. Hill made it clear that he wanted to appeal." Filing 117 at 14. Because these claims are asserted for the first time in Hill's reply brief, the Court will dismiss them. *See Smith v. United States*, 256 Fed.Appx. 850, 852 (8th Cir. 2007) (unpublished per curiam) ("[T]he district court did not err in dismissing claims raised for the first time in a § 2255 reply brief." (citing *Hohn v. United States*, 193 F.3d 921, 923–24 n.2 (8th Cir. 1999))); *United States v. Darden*, 915 F.3d 579, 586 n.9 (8th Cir. 2019) (finding "no reason" to "consider arguments raised for the first time in a reply brief"); *United States v. Martinson*, 419 F.3d 749, 753 (8th Cir. 2005) (refusing to consider an ineffective assistance claim that was raised for the first time in the defendant's reply brief); *Payne v. United States*, 45 F.3d 433, *2 (8th Cir. 1995) (per curiam) (declining to address the petitioner's "unsupported claim—first raised on appeal and first argued in his reply brief—that counsel failed to file a timely notice of appeal despite having promised to do so"); *United States v. Ramirez-Mendoza*, No. 5:11-CR-50065, 2014 WL 5460489, at *1 n.1 (W.D. Ark. Oct. 27, 2014) (rejecting the petitioner's claim that his counsel was ineffective for not filing an appeal when that claim was not raised in the petitioner's § 2255 motion and was only raised for the first time in his objections to the magistrate judge's report and recommendation).

Because the Court has denied Hill's § 2255 motion in full for the reasons stated above, no evidentiary hearing is warranted. *See Franco*, 762 F.3d at 763 ("No hearing is required, however, where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." (internal quotation marks and citation omitted)). Additionally, Hill's request that the Court appoint him "conflict-free counsel to represent him in all further proceedings" is

denied, as there will be no further proceedings. *See* Rule 8(c) of the Rules Governing Section 2255 Proceedings (providing that only when an evidentiary hearing is warranted must the judge appoint counsel to a qualifying party).

### D.  Certificate of Appealability

No appeal may be taken on a § 2255 motion to vacate unless a judge issues a certificate of appealability, which requires the appellant to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(1)–(2). To make "a substantial showing of the denial of a constitutional right" after the district court denies a constitutional claim on the merits, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a petition is denied on procedural grounds, a petitioner is entitled to a certificate of appealability if the petitioner "shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Reasonable jurists would not find the Court's decisions debatable here. Therefore, the Court will not issue a certificate of appealability.

### III. CONCLUSION

For the reasons stated above, Hill's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 fails. Accordingly,

IT IS ORDERED:

1. Keith A. Hill's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, Filing 101, is denied; and

2. The Court will not issue a certificate of appealability.

Dated this 19th day of March, 2026.

BY THE COURT:

Brian C. Buescher
United States District Judge